# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

CONNER CREEK CENTER LLC,

        Debtor.

_____/

STUART A. GOLD, TRUSTEE,

        Plaintiff,

vs.

DOROTHY E. MCLEMORE TRUST,

and

ANDREW GENE MCLEMORE, SR.,

        Defendants.

_____/

Case No. 23-48356

Chapter 7

Judge Thomas J. Tucker

Adv. No. 24-4367

## OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction and background

This is a fraudulent transfer case. This adversary proceeding is before the Court on the
Plaintiff's motion for summary judgment (Docket # 39, the "Motion"). The Court will grant the
Motion, for the reasons stated in this Opinion.[1]

The Plaintiff is the Trustee in the voluntary Chapter 7 bankruptcy case of Conner Creek
Center, LLC (the "Debtor"), which was filed on September 22, 2023. In this adversary

---

[1] The Court finds and concludes that there is no genuine dispute of any material fact relevant to
the Motion. The Plaintiff has demonstrated, beyond any genuine dispute, with evidence, and in part by
admissions made by counsel for the Defendant Andrew Gene McLemore, Sr. during the hearing on the
Motion, all of the facts stated in this Opinion.

proceeding the Plaintiff seeks to avoid and recover numerous pre-petition transfers of money made by the Debtor to the two Defendants. The Defendants are the Dorothy E. McLemore Trust (referred to below as the "Defendant Trust" or the "Trust"), and Andrew Gene McLemore, Sr. (referred to below as "Defendant McLemore" or "McLemore").

Defendant McLemore is, and at all relevant times was, the Trustee and the sole beneficiary of the Defendant Trust. And at all relevant times, the Trust owned 99% of the membership interests in the Debtor. Defendant McLemore owned the other 1% of the membership interests in the Debtor, and was the managing member of the Debtor.

During the time period January 14, 2021 through April 25, 2022, Defendant McLemore caused the Debtor to make six transfers of money to the Defendant Trust, totaling $417,500.00 (the "Trust Transfers"). These were made by ACH transfers from the Debtor's bank account into the Trust's bank account.

During the time period March 14, 2021 through August 4, 2023, Defendant McLemore caused the Debtor to make twenty-four transfers of money to himself, totaling $88,640.00. These were made by ACH transfers from the Debtor's bank account into Defendant McLemore's personal bank account. In addition, during the time period January 8, 2021 through September 18, 2023, Defendant McLemore caused the Debtor to make, and Defendant McLemore received, numerous transfers by cash withdrawals from the Debtor's bank account, totaling $637,679.89. The transfers by the Debtor to Defendant McLemore, therefore, totaled $726,319.89 (the "McLemore Transfers").

In his Complaint,[2] the Plaintiff seeks to avoid and recover the Trust Transfers and the

---

[2] Docket # 1.

McLemore Transfers, all as constructively fraudulent transfers, based on a combination of 11 U.S.C. §§ 544(b)(1), 550(a)(1), and Michigan's fraudulent transfer statutes. On October 8, 2024, the Plaintiff obtained a default judgment against the Defendant Trust on the claims directed against the Trust, in Counts I and II of the Complaint.[3] That default judgment avoided the Trust Transfers, and entered a judgment against the Trust in the amount of $399,500.00 plus post-judgment interest.[4]

In his pending Motion, the Plaintiff seeks summary judgment against Defendant McLemore, for avoidance and recovery of all of the transfers, in the total amount of $1,125,819.89.

Defendant McLemore timely filed an objection to the Motion, and the Court held a hearing on April 23, 2025. At that time, the Court also held a hearing on two related motions filed by Defendant McLemore, which are listed in footnote 40 of this Opinion below, and which the Court today has denied, by separate order. The Court concludes that it must grant the Plaintiff's Motion, for the relief sought.

## II. Jurisdiction

This Court has subject matter jurisdiction over the Chapter 7 bankruptcy case of the Debtor, and over this adversary proceeding, under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1),

---

[3] "Default Judgment Against Dorothy E. McLemore Trust" (Docket # 14).

[4] As the Plaintiff's counsel explained during the hearing on the Motion, the Complaint contained an error, resulting in an allegation that the Trust Transfers totaled $399,500.00, which is $20,000.00 less than the actual total of the Trust Transfers of $417,500,00. As a result, the Plaintiff sought and obtained a default judgment against the Trust in the lower amount, $399,500.00. The Plaintiff's counsel stated during the hearing that the Plaintiff will live with that error, such that the Plaintiff now seeks summary judgment against Defendant McLemore for recovery of the avoided Trust Transfers only in the lower amount, $399,500.00.

and Local Rule 83.50(a) (E.D. Mich.).  As a proceeding to avoid and recover fraudulent

conveyances, this adversary proceeding is a core proceedings under 28 U.S.C. § 157(b)(2)(H).

This adversary proceeding also is "core," with respect to all of the Plaintiff's claims

(Counts I through V) in his Complaint, because they each fall within the definition of a

proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11.  *See* 28

U.S.C. § 1334(b).  Matters within either of these categories are deemed to be core proceedings.

*Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009).  This

is a proceeding "arising under title 11" because it is "created or determined by a statutory

provision of title 11," *id.*, including the provisions of 11 U.S.C. §§ 544(b)(1) and 550(a)(1).  And

this proceeding is one "arising in" a case under title 11, because it is a proceeding that "by [its]

very nature, could arise only in bankruptcy cases."  *Allard v. Coenen,* 419 B.R. at 27.

For these reasons, this Court has *statutory* authority, under 28 U.S.C. § 157(b)(1), to enter

a final judgment on all of the counts of the Plaintiff's Complaint.  If and to the extent this Court

might otherwise lack *constitutional* authority to enter a final judgment, under *Stern v. Marshall*,

564 U.S. 462 (2011), such a problem does not exist in this case.  This is because the Plaintiff and

Defendant McLemore each expressly, knowingly, and voluntarily consented to this bankruptcy

court entering a final order or judgment, as permitted by 28 U.S.C. § 157(c)(2).[5]  Given that

consent, this bankruptcy court has both statutory and constitutional authority to enter a final

judgment on the Plaintiff's claims in the Complaint.  *See Ralph Roberts Realty, LLC v. Savoy* (*In

re Ralph Roberts Realty*), 562 B.R. 144, 147-48 (Bankr. E.D. Mich. 2016) (discussing, among

other cases, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015)); *Dery v. Karafa* (*In re*

---

[5]  *See* Report of Parties' Rule 26(f) Conference (Docket # 21) at 3 ¶ 3(g).

*Dearborn Bancorp, Inc.*), 583 B.R. 395, 400 (Bankr. E.D. Mich. 2018).

## III. Discussion

### A. Summary judgment standards

In considering whether summary judgment should be granted for the Plaintiff, the Court

applies the standards governing motions for summary judgment under Fed. R. Civ. P. 56, which

the Court has described in detail in many prior opinions:

> Fed. R. Civ. P. 56(a), applicable to bankruptcy adversary
> proceedings under Fed. R. Bankr. P. 7056, provides that a motion
> for summary judgment "shall" be granted "if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law." *In Cox v.*
> *Kentucky Dep't of Transp.*, 53 F.3d 146, 149–50 (6th Cir.1995),
> the court elaborated:
>
> > The moving party has the initial burden of proving
> > that no genuine issue of material fact exists and that
> > the moving party is entitled to judgment as a matter
> > of law. **To meet this burden, the moving party**
> > **may rely on any of the evidentiary sources listed**
> > **in Rule 56(c) or may merely rely upon the failure**
> > **of the nonmoving party to produce any evidence**
> > **which would create a genuine dispute for the**
> > **[trier of fact]. Essentially, a motion for summary**
> > **judgment is a means by which to challenge the**
> > **opposing party to 'put up or shut up' on a**
> > **critical issue.**
> >
> > **If the moving party satisfies its burden, then the**
> > **burden of going forward shifts to the nonmoving**
> > **party to produce evidence that results in a**
> > **conflict of material fact to be resolved by [the**
> > **trier of fact].** In arriving at a resolution, the court
> > must afford all reasonable inferences, and construe
> > the evidence in the light most favorable to the
> > nonmoving party. However, if the evidence is
> > insufficient to reasonably support a . . . verdict in
> > favor of the nonmoving party, the motion for

5

summary judgment will be granted. Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff.

. . .

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson* [v. *Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)], *Celotex* [*Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ] and *Matsushita* [*Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ], trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. **The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts.** If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining whether the moving party has met its burden, a court must "believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir.1999) (relying on *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041–42 (6th Cir.1992)).

*Schubiner v. Zolman* (*In re Schubiner*), 590 B.R. 362, 376-77 (Bankr. E.D. Mich. 2018)

(emphasis added) (quoting *McCallum v. Pixley* (*In re Pixley* ), 456 B.R. 770, 774–75 (Bankr.

E.D. Mich. 2011)).

## B. Bankruptcy Code § 544(b)(1) and applicable Michigan law

The Plaintiff's constructive fraudulent transfer claims are based on a combination of 11

6

U.S.C. § 544(b)(1) and Michigan law.  Section 544(b)(1) states:

> [With an exception not applicable here], the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).  The "applicable law" the Plaintiff relies on is Michigan's Uniform

Voidable Transactions Act, specifically, Mich. Comp. Laws §§ 566.34(1)(b) and 566.35(1).

Section 566.34(1)(b) states, in relevant part:

> (1) [With an exception not applicable here], a transfer made . . . by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made[,] . . .  if the debtor made the transfer . . . in either of the following circumstances: . . . .
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer[,] . . . and the debtor did either of the following:
>
> *(i)* Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> *(ii)* Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Mich. Comp. Laws § 566.34(1)(b).

Section 566.35(1) states, in relevant part:

> (1) A transfer made . . . by a debtor is voidable as to a creditor whose claim arose before the transfer was made[,] . . .  if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

Mich. Comp. Laws § 566.35(1).

The Plaintiff Trustee "has the burden of proving the elements of the claim for relief [under Mich. Comp. Laws §§ 566.34(1) and 566.35(1)] by a preponderance of the evidence." *See* Mich. Comp. Laws §§ 566.34(3), 566.35(3).

**C. The Plaintiff has established, beyond any genuine dispute, all of the necessary elements for avoiding the transfers at issue under Mich. Comp. Laws § 566.35(1).**

The Court concludes that based on the facts about which there is no genuine dispute, the Plaintiff has established all of the necessary elements for avoiding all of the Trust Transfers and all of the McLemore Transfers under Mich. Comp. Laws § 566.35(1), quoted above.[6]  For this reason, the Court will grant summary judgment for the Plaintiff.

First, as discussed below, the Debtor made all of the transfers "[w]ithout receiving a reasonably equivalent value in exchange for the transfer."  This element is the only element of the Plaintiff's constructive fraudulent transfer claims that is even arguably disputed by Defendant McLemore.

Second, as the Plaintiff's evidence shows without any dispute, "the [D]ebtor was insolvent," within the meaning of Mich. Comp. Laws §§ 566.35(1) and 566.32,[7] at the time of each of the Trust Transfers and each of the McLemore Transfers.

Third, each of the transfers was of an interest of the Debtor in property.

---

[6]  In light of this, the Court does not need to decide whether the transfers also are avoidable based on Mich. Comp. Laws § 566.34(1)(b).

[7]  Insolvency is defined in Mich. Comp. Laws Ann. § 566.32(1): "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."  "'Asset' means property of a debtor," but "does not include" property "to the extent it is encumbered by a valid lien" or property "to the extent it is generally exempt under nonbankruptcy law." *See* Mich. Comp. Laws Ann. § 566.31(1)(b).  And a debtor is "presumed to be insolvent" if the debtor "is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute . . . ."  Mich. Comp. Laws Ann. § 566.32(2).  When such a presumption arises, it must be rebutted by a preponderance of the evidence. *See id.*

Fourth, each of the transfers at issue was made within 6 years before the date the Debtor filed its bankruptcy petition. *See* Mich. Comp. Laws §§ 566.39(a), 600.5813. As described in Part I of this Opinion, above, the transfers were made during the time period of January 8, 2021 through September 18, 2023. The Debtor filed its bankruptcy petition on September 22, 2023.

Fifth and finally, there were creditors who had claims against the Debtor before each of the transfers at issue was made.

**D. The Debtor received no "value," and therefore received no "reasonably equivalent value" for any of the transfers at issue.**

Under Mich. Comp. Laws § 566.33(1), "[v]alue is given for a transfer . . . if, in exchange for the transfer . . ., property is transferred or an antecedent debt is secured or satisfied." In his Answer to the Plaintiff's Complaint, filed September 25, 2024, Defendant McLemore alleged that some or all of the transfers at issue were repayments of loans that the Trust and Defendant McLemore had made to the Debtor.[8]

Before discussing this defense, the Court will discuss whether and when Defendant McLemore has been assisted by an attorney in this case. From the time the Plaintiff filed his Complaint on September 4, 2024 until February 24, 2025, no attorney entered an appearance or filed any paper in this case on behalf of Defendant McLemore. Rather, during that five and one-half month time period, Defendant McLemore (who is not an attorney) purported to represent himself in this case. Finally, on February 24, 2025, almost a month after the Plaintiff filed his summary judgment motion on March 27, 2025, an attorney and law firm entered an appearance

---

[8] *See, e.g.*, "Answer to Complaint" (Docket # 4) at ¶¶ 13-14, 16, 25.

9

for Defendant McLemore, and began to officially represent him and file papers on his behalf.[9]

But Defendant McLemore previously had received help in this case from another, unnamed attorney, who never entered an appearance. Defendant McLemore's new counsel admitted this during the hearing on the Motion, although he stated that he did not know what help the unnamed attorney had given or when it was given.[10] The Plaintiff has alleged that Defendant McLemore "has been using the services of an attorney throughout this case, who has been ghost writing Mr. McLemore's pleadings," and has named Darwyn P. Fair of Detroit as that attorney.[11] Defendant McLemore has not admitted or denied these allegations.

Based on the foregoing, the Court cannot find, and will not assume, that Defendant McLemore has been without counsel at any time during the pendency of this case.

With that in mind, the Court will address the claimed defense that some or all of the Debtor's transfers at issue were to repay a loan or loans made to the Debtor.

According to the Plaintiff's Complaint, the only documents indicating that there was any loan made to the Debtor, by either the Defendant Trust or Defendant McLemore, indicated that there was a purported loan from the Defendant Trust. That loan was indicated only by "the balance sheets contained in the Debtor's federal corporate income tax returns for the calendar

_____

[9] *See* "Notice of Appearance" filed by attorney Max J. Newman and Butzel Long PC on February 24, 2025 (Docket # 45).

[10] An initial scheduling conference was held in this case by telephone on November 4, 2024, and was attended by the Plaintiff's counsel and by Defendant McLemore. During that conference, the Plaintiff's counsel stated his suspicion that an unnamed attorney was helping Defendant McLemore in this case, and "ghost writing" pleadings for him. Defendant McLemore did not respond to those statements. (The audio recording of this initial scheduling conference is on file at Docket # 23).

[11] *See* "Objection to Andrew Gene McLemore, Sr.'s Motion to Set Aside Admissions," filed March 27, 2025 (Docket # 62) at 2 & n.1.

10

years 2018 through 2022."[12]  The Complaint alleged that there was no documentation or substantiation of that purported "Member Loan" anywhere else in the Debtor's records:

> 20. There were no member authorizations, no promissory notes, no written loan terms, no loan interest, and no sinking fund prepared or established in connection with the Member Loan.  Further, defendants have not produced any documents to substantiate any amount of the Member Loan from the inception of the company through the bankruptcy filing in response to the Court's prior November 21, 2023 Order Compelling Dorothy McLemore Trust, Raymond Scott McLemore, Andrew Gene McLemore, Sr. and Andrew McLemore, Jr. to Turnover Property of the Bankruptcy Estate. (Bankr. Docket #80)
>
> 21. The Debtor's bankruptcy schedules filed with the Bankruptcy Court on October 6, 2023, signed by McLemore, made no mention of the Member Loan.
> . . .
>
> 40. The McLemore Trust was never issued any promissory notes by the Debtor.
> . . .
>
> 44. The Member Loan was not memorialized in Debtor's corporate records.
>
> 45. The Member Loan has not been substantiated as having been made and there are no records substantiating the Member Loan other than what was reflected in the Debtor's income tax returns.[13]

In Count I of his Complaint, the Plaintiff sought a judgment "recharacterizing" that purported "Member Loan" from the Defendant Trust, to an equity investment in the Debtor.[14] And in Count II of the Complaint, the Plaintiff sought the avoidance of all of the Trust Transfers

---

[12]  *See* Compl. (Docket # 1) at ¶ 14.

[13]  *Id.* at ¶¶ 20-21, 40, 44-45,

[14]  *See id.* at ¶¶ 38-46.

as fraudulent transfers, as having been made for "no consideration" and for "less than reasonably equivalent value."[15]

The Court granted the relief sought in Counts I and II against the Defendant Trust, in the default judgment entered on October 8, 2024.[16]  So in that default judgment, the purported Member Loan by the Defendant Trust to the Debtor, if it even existed, was recharacterized as equity, and all of the Trust Transfers were avoided as fraudulent transfers.

As a result of that default judgment and the avoidance of the Trust Transfers in the amount of $399,500.00, the Plaintiff is entitled to recover that amount from Defendant McLemore under 11 U.S.C. § 550(a)(1).  That is because, as discussed in Part III.E of this Opinion, below, Defendant McLemore was "the entity for whose benefit" those Trust Transfers were made.

As to the $726,319.89 in McLemore Transfers, the Plaintiff is entitled to summary judgment avoiding and recovering those transfers.  On the summary judgment record before the Court, the Court must reject, as a matter of law, any defense that any of the McLemore Transfers were made to repay any loan that Defendant McLemore had made to the Debtor.  Rather, the Court must conclude that there was no such loan.

In discovery, the Plaintiff requested that Defendant McLemore provide information and documents supporting any claim that any of the McLemore Transfers were made to repay any loan.  Defendant McLemore's responses showed that he had no such information and had no such documents.  And McLemore never supplemented his discovery responses to provide any

---

[15]  *See id.* at ¶¶ 47-56.

[16]  Docket # 14.

such information or documents.

On November 4, 2024, the Plaintiff served Defendant McLemore with a set of admission requests, interrogatories, and document requests.[17] Among other things, the Plaintiff requested, in two separate admission requests, that Defendant McLemore admit that "the Debtor did not receive any property or anything of value in exchange for" the McLemore Transfers that the Debtor made to Defendant McLemore.[18]

On December 4, 2024, Defendant McLemore served his discovery responses.[19] He denied the foregoing admission requests, by stating that any transfer the Debtor made to him "was for the repayment of a loan."[20]

The Plaintiff's interrogatories asked Defendant McLemore about any denial he made to the foregoing admission requests:

    a. Describe in detail the basis for your non-admission including all facts and/or law which support such non-admission.

    b. Identify and describe all documents that support your non-admission, including all documents evidencing any debt satisfied or other value given to or received by the Debtor in exchange for the McLemore Transfers.[21]

In response, Defendant McLemore stated only the following, in his unsworn interrogatory answers:

---

[17] Docket # 26.

[18] *See* Req. to Admit Nos. 1, 2 (Docket # 26).

[19] *See* Docket # 30, filed December 5, 2024.

[20] *See* Resp. to Req. to Admit Nos. 1, 2 (Docket # 30).

[21] Interrog. No. 1 (Docket # 26); *see also* Interrogatory No. 2 (Docket # 26).

13

**Any property or anything of value in exchange for the McLemore Transfers made to me was for the repayment of a loan.**

**Defendants' evaluation of the documents and things that it may use in support of its claims or defenses is continuing and ongoing. Accordingly, Defendants reserve the right to supplement this answer.**[22]

The Plaintiff's document requests asked Defendant McLemore "to produce all documents that support your denial and the documents identified in [your interrogatory answer].[23] Defendant McLemore responded with only the following:

**Defendants are no longer in possession of the documents that were given to the Trustee. Any bank statements that were not given to the Trustee are being obtained from the financial institutions. . . . Accordingly, Defendants reserve the right to supplement this answer.**[24]

These discovery responses showed that Defendant McLemore could give no information or documentation to show that any of the transfers he received from the Debtor were to repay a loan. If and to the extent Defendant McLemore's discovery responses suggested that he thought the Plaintiff Trustee might have such information or documentation, McLemore never made any discovery request of the Plaintiff, to try to obtain such information or documentation. And if and to the extent that Defendant McLemore's discovery responses suggested that he was still investigating the matter, and might supplement his discovery responses later, McLemore never supplemented his discovery responses.

---

[22] Resp. to Interrog. No. 1 (Docket # 30) (bold in original); *see also* Resp. to Interrog. No. 2 (Docket # 30).

[23] *See* Req. to Produce Nos. 1, 2 (Docket # 26).

[24] *See* Resp. to Req. to Produce Nos. 1, 2 (Docket # 30 (bold in original)).

14

Finally, in his written response to the Plaintiff's summary judgment motion, filed on February 27, 2025,[25] Defendant McLemore did not provide any evidence whatsoever to support his loan-repayment defense.

Under the circumstances, and under the standards governing summary judgment motions, quoted in Part III.A of this Opinion, above, the Court must find and conclude that no genuine issue of material fact exists and that the Debtor did not receive any value, in the form of any satisfaction of antecedent debt or otherwise, in exchange for any of the McLemore Transfers.

The Plaintiff has met his summary judgment burden, as described in the Sixth Circuit's decision *Cox v. Kentucky Dep't. of Transporation*, quoted above:

> **To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the [trier of fact].** Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.1995) (citation omitted) (emphasis added). As the Plaintiff has accurately stated, his summary judgment motion is supported by:

> the Debtor's bank statements evidencing the transfers, Plaintiff's expert who identified the transfers by date, amount and bank account, the Debtor's bankruptcy schedules signed by Defendant (which do not disclose any claim held by any of the Defendants or the transfers sought to be avoided), the proofs of claim filed against the bankruptcy estate proving insolvency, and on reasonably equivalent value, the defendant's admissions in his answer to the complaint, his timely written answers to interrogatories, and the absence of any records to support any claim that the Debtor received reasonably equivalent value in exchange for the transfers

---

[25] Docket # 46.

[s]ought to be avoided.[26]

In response, Defendant McLemore had to come forward with evidence to support his loan-repayment defense, and he did not do so:

> If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact].

*Cox*, 53 F.3d at 150.

In his summary judgment response, filed and signed by his new attorney, Defendant McLemore stated that he "is a 94-year-old man," that he has had "several severe medical conditions for some time," and that these "have severely affected his participation and representation of himself in the matter, including but not limited to his ability to meaningfully participate in the discovery process."[27]  In his summary judgment response, Defendant McLemore sought some unspecified additional amount of time to produce documents, "although this process may take some time due to Defendant [McLemore's] health issues," and to "address prior discovery deficiencies."[28]  And Defendant McLemore stated that allowing he and his new counsel such additional time "would allow Defendant [McLemore] to create genuine issues of material facts that would prevent the granting of summary judgment."[29]

---

[26]  "Objection to Andrew Gene McLemore, Sr.'s Motion to Set Aside Admissions" (Docket # 62) at 5.

[27]  "Defendant Andrew Gene McLemore, Sr's Response Brief to Plaintiff's Motion for Summary Judgment" (Docket # 46) at 1-2.

[28]  *Id.* at 3-4.

[29]  *Id.*

16

These assertions in the brief filed by Defendant McLemore's new counsel are insufficient to avoid summary judgment. First, these assertions are not adequately supported by evidence; rather, they are merely statements by Defendant McLemore's counsel. Second, these assertions are insufficient to explain Defendant McLemore's inability to come forward now with ***any*** evidence in support of his loan repayment defense, or any other defense. And third, Defendant McLemore has not come close to satisfying the requirements of Fed. R. Civ. P. 56(d).[30]

Rule 56(d) states:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Defendant McLemore has not met the requirements to obtain any relief under this rule. First, he has not filed an affidavit, or a declaration under penalty of perjury. This alone prevents any relief under Rule 56(d). *See, e.g., CareToLive v. Food and Drug Admin.*, 631 F.3d 336, 344-45 (6th Cir. 2011) (district court did not abuse its discretion in denying defendant's request for more time to conduct discovery, in response to plaintiff's summary judgment motion, because defendant failed to file an affidavit or declaration under penalty of perjury, as required by Fed. R. Civ. P. 56(d)); *United States v. One Harrington and Richardson Rifle, Model M-14, 7.62 Caliber Serial No. 85279*, 378 F.3d 533, 535 (6th Cir. 2004) (citations

---

[30] Fed. R. Civ. P. 56 applies in this adversary proceeding, under Fed. R. Bankr. P. 7056.

17

omitted) (rejecting defendant's argument that he was not provided a sufficient opportunity for discovery before summary judgment was granted against him, because under Fed. R. Civ. P. 56(d) (which then was Fed. R. Civ. P. 56(f)), defendant "did not file an affidavit in the district court detailing the discovery needed and demonstrating specific reasons why he could not oppose the government's [summary judgment] motion and how postponement of a ruling would have enabled him to rebut the government's showing of the absence of a genuine issue of fact.").

Second, Defendant McLemore has not adequately explained or supported the assertion in his summary judgment response, that he would be able to demonstrate genuine issues of material fact if given more time. This also prevents any relief under Rule 56(d). *See One Harrington and Richardson Rifle*, 378 F.3d at 535.

Third, the two documents Defendant McLemore has filed from his doctors, which are unsworn statements, are insufficient to explain why Defendant McLemore has never been able to come forward with any evidence whatsoever to support his loan repayment defense.

The first medical document is entitled "Return to Work Note," and is dated January 13, 2025.[31] That one-page handwritten note is on the letterhead of a group of urologists named "Comprehensive Urology," and is signed by someone under the caption "Provider or Staff Signature," but whose signature is illegible, so it is not even clear that this note was signed by a physician, rather than some less-qualified staff person. And all the note says about Defendant

---

[31] This document (the "Return to Work Note") appears in several places in the record. It was filed for the first time on February 13, 2025 as Exhibit B to Defendant McLemore's motion entitled "Emergency Motion for Stay of Proceedings" (Docket # 40 at pdf p. 16). That motion was filed two days after the Plaintiff filed his motion for summary judgment (Docket # 39). The Court denied Defendant McLemore's corrected version of that motion, in an Order filed on March 10, 2025 (Docket # 51).

18

McLemore is "will not be able to sit for deposition dated 1/16/25 due to a medical condition."[32]

That "Return to Work Note" addressed, at most, only Defendant McLemore's ability to sit for a deposition on January 16, 2025. It says nothing about McLemore's state of health at any other time, and says nothing about McLemore's ability to present evidence about his loan repayment defense. Nor does it say anything about McLemore's ability to respond to the Plaintiff's discovery requests with details and documents about the loan repayment defense.

As described above, the Plaintiff had formally requested that Defendant McLemore produce detailed information and documentation about that defense, in the Plaintiff's discovery requests filed on November 4, 2024. And after no information or documents were produced, in Defendant McLemore's December 4, 2024 discovery responses, the Plaintiff filed and served Defendant McLemore with a deposition notice, on December 6, 2024.[33] That notice not only scheduled a deposition of McLemore, for January 16, 2025, but also required McLemore to produce at the deposition the following documents:

> 1. All documents responsive to Plaintiff's request for production of documents numbered 1 through 13 in Plaintiff's prior November 4, 2024 Request For Admission, Interrogatories and Request For Production of Documents To Defendant Andrew Gene McLemore, Sr..
>
> 2. Any and all documents that relate to, refer to or evidence McLemore's claimed defenses to Plaintiff's complaint.
>
> 3. Any and all documents that McLemore may or will introduce

---

[32] Return to Work Note (Docket # 40 at pdf p. 16).

[33] Docket # 32.

19

into evidence at the trial in this adversary proceeding.[34]

Under Fed. R. Civ. P. 30(b)(1), 30(b)(2), and 34,[35] service of this deposition notice and document request on Defendant McLemore, as a party in this case, was sufficient by itself to compel McLemore's attendance at the deposition and production of the requested documents. *See* Fed. R. Civ. P.  37(d)(1)(A);[36] *see also Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1158 (9th Cir. 2010) ("If a person is a party, a simple notice of deposition is sufficient to compel attendance[.]").

Even if McLemore was unable to sit for a deposition on January 16, 2025, as suggested by the vague "Return to Work Note," there is no evidence that McLemore could not have produced the requested documents to the Plaintiff, in response to the December 6, 2024 deposition notice *duces tecum*.  Yet McLemore produced no documents, and never has produced any documents in response to the Plaintiff's discovery requests, or even in response to the Plaintiff's summary judgment motion.

The second medical document is a letter dated February 2, 2025, from Michael A. Williams, M.D.[37]  This too is an unsworn statement.  It describes various medical problems that

---

[34] "Notice of Deposition of Defendant Andrew G. McLemore, Sr. Duces Tecum" (Docket # 32) at pdf pp. 2-3.

[35] Fed. R. Civ. P. 30 and 34 apply in this adversary proceeding, under Fed. R. Bankr. P. 7030 and 7034.

[36] Fed. R. Civ. P. 37 applies in this adversary proceeding, under Fed. R. Bankr. P. 7037.  Under Rule 37(d)(1)(A), the Court may sanction a party if he "fails, after being served with proper notice, to appear for that person's deposition," and if a party, "after being properly served with . . . a request for inspection under Rule 34, fails to serve its . . . written response."

[37] This document (the "Williams Letter") appears in several places in the record.  It was filed for the first time on February 13, 2025 as Exhibit A to Defendant McLemore's motion entitled "Emergency Motion for Stay of Proceedings" (Docket # 40 at pdf p. 13).

Defendant McLemore had, as of February 2, 2025. And it opines that "[a]t present, the Patient's health prevents adequate participation in complex, demanding tasks, such as reviewing legal documents, meeting with counsel, traveling to court, or testifying."[38]

This unsworn letter is insufficient to explain why Defendant McLemore has never been able to come forward with any evidence whatsoever to support his loan repayment defense. And it says nothing about McLemore's ability to participate in this litigation during the five months that this adversary proceeding was pending *before* February 2, 2025. Beginning with the Answer that he filed on September 25, 2024, and continuing with the discovery responses he filed on December 5, 2024, Defendant McLemore alleged that the Debtor's transfers to him were repayment of loans McLemore had made to the Debtor. So Defendant McLemore knew that this was an important issue, yet he never responded to the Plaintiff's discovery requests, first made on November 4, 2024 and then repeated with the document requests contained in the Plaintiff's December 6, 2024 deposition notice, by producing any specific information or documentation supporting his allegation about loan repayments.

Notably, when Defendant McLemore filed his discovery responses on December 5, 2024, he said nothing at all about his health hindering his ability to respond to discovery and to defend himself properly in this case. He said nothing at all about this until after the Plaintiff filed his summary judgment motion on February 11, 2025.

Moreover, recent events have occurred, after Defendant McLemore first filed the "Return to Work Note" and the Williams Letter on February 13, 2025, that indicate that McLemore *does* have the ability to participate in the defense of this adversary proceeding. First, Defendant

---

[38] Williams Letter (Docket # 40 at pdf p. 14).

McLemore has been well enough to have liquidated at least one significant asset. His new attorney admitted during the April 23, 2025 hearing that in February 2025, McLemore caused his personal trust to sell the "10,000 square foot" home McLemore was living in.

Second, when Defendant McLemore finally decided to hire new counsel to appear and defend him in this case, starting on February 18, 2025, he appears to have had no problem in actively litigating this case, through his attorneys. His new attorneys not only filed a response to the Plaintiff's summary judgment motion,[39] but also filed and have prosecuted two related motions on McLemore's behalf,[40] and argued the pending motions at the April 23, 2025 hearing.

Based on all of the foregoing, the Court concludes that Defendant McLemore is not entitled to any further delay in meeting his obligation to adequately respond to the Plaintiff's summary judgment motion. In the words of the Sixth Circuit case quoted in Part III.A of this Opinion, the time has passed for Defendant McLemore to "put up or shut up" on his asserted defense(s) to the Plaintiff's claim. *See Cox*, 53 F.3d at 149 (citation omitted); *see also Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citation omitted) ("The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.").

Because Defendant McLemore has presented no evidence whatsoever to support his asserted loan repayment defense, the Court must conclude that there is no genuine issue of fact and that the Debtor received no value in exchange for any of the McLemore Transfers.

---

[39] Docket # 46.

[40] "Defendant Andrew Gene McLemore, Sr's Motion to Set Aside Discovery Sanctions Order" (Docket # 56), filed March 27, 2025; "Defendant Andrew Gene McLemore, Sr's Motion to Set Aside Admissions" (Docket # 58), filed March 27, 2025.

**E. The Plaintiff is entitled to summary judgment recovering the amount of the avoided Trust Transfers, and avoiding and recovering the McLemore Transfers.**

Because the Plaintiff has established all of the elements of his constructive fraudulent transfer claims under 11 U.S.C. § 544(b)(1) and Mich. Comp. Laws § 566.35(1), all of the McLemore Transfers, totaling $726,319.89, are avoidable and will be avoided. The value of those transfers may be recovered from Defendant McLemore, the initial transferee of those transfers, under 11 U.S.C. § 550(a)(1). That section states: "[with exceptions not applicable here], to the extent that a transfer is avoided under section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]" 11 U.S.C. § 550(a)(1).

The value of the avoided Trust Transfers, in the amount of $399,500.00, also may be recovered from Defendant McLemore, under § 550(a)(1), because Defendant McLemore was "the entity for whose benefit" the Trust Transfers were made.[41] This is obvious, and cannot be genuinely disputed, because it is undisputed that Defendant McLemore was the Trustee and the 100% beneficiary of the Defendant Trust. When the Trust Transfers went from the Debtor's bank account into the Trust's bank account, the Trust had complete dominion and control of the proceeds, and Defendant McLemore had complete beneficial ownership and the complete right of dominion and control over that property of the Trust. No matter what Defendant McLemore chose to cause his Trust to do with those proceeds, that was his choice, and he had the complete

---

[41] Defendant McLemore's only argument as to why he contends that the value of the avoided Trust Transfers are not recoverable from him, under 11 U.S.C. § 550(a)(1), is that the Trust Transfers were not made for his benefit. Defendant McLemore has not presented or cited any evidence to support this argument, however, and the Court rejects it, as explained above.

benefit of that choice.

For these reasons, the Plaintiff is entitled to summary judgment in the form of a money judgment against Defendant McLemore in the total amount of $1,125,819.89, plus post-judgment interest at the federal statutory rate under 28 U.S.C. § 1961.

## IV. Conclusion

For the reasons stated in this Opinion, the Court will enter an order:

1. granting the Plaintiff's motion for summary judgment;

2. granting a money judgment on Count II of the Plaintiff's complaint, in favor of the Plaintiff and against Defendant McLemore, in the amount of $399,500.00, representing the value of the avoided Trust Transfers, plus post-judgment interest at the federal statutory rate under 28 U.S.C. § 1961, plus costs;

3. granting judgment on Count III of the Plaintiff's complaint, in favor of the Plaintiff and against Defendant McLemore, avoiding the McLemore Transfers in the total amount of $726,319.89, based on the combination of 11 U.S.C. § 544(b)(1) and Mich. Comp. Laws § 566.35(1);

4. granting a money judgment on Count III of the Plaintiff's complaint, in favor of the Plaintiff and against Defendant McLemore, in the amount of $726,319.89, representing the value of the avoided McLemore Transfers, plus post-judgment interest at the federal statutory rate under 28 U.S.C. § 1961, plus costs;

5. dismissing Counts II and III of the Plaintiff's complaint, without prejudice, to the extent they seek avoidance or recovery of the Trust Transfers or the McLemore Transfers, either as intentional fraudulent transfers based on 11 U.S.C. § 544(b)(1) and Mich. Comp. Laws § 566.34(1)(a), or as constructively fraudulent transfers under 11 U.S.C. § 544(b)(1) and Mich. Comp. Laws § 566.34(1)(b);

6. dismissing Counts IV and V of the Plaintiff's complaint, without prejudice.

Signed on May 5, 2025



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**